OPINION

PROCEDURAL HISTORY AND OVERVIEW

CERAFIN JOHN MORALES, JR.
(hereafter “MORALES” or defendant) is a member of the Fort Peck Tribal Executive Council and was charged, as a result of an incident occurring during a Tribal Council meeting, with violating Title III Fort Peck CCOJ Section 407a[1] in a complaint[2] filed in Tribal Court on May 6, 1997. MORALES appeared pro se for arraignment and entered a plea of “Not Guilty” on May 9, 1997, at which time the Tribal Court set a pretrial conference for June 19, 1997 and a jury trial for August 12, 1997. On May 27, 1997, a NOTICE OF APPEARANCE AS ATTORNEY OF RECORD was filed by Lay Advocate Leighton E. Reum on behalf of MORALES. On June 19,1997, a pretrial conference was held and at that time, according to defendant, an agreement between the Fort Peck Tribes’ prosecutor, Bryce Wildcat and Layton Reum. was reached wherein the only Motion to be filed in Court would be a Motion for the appointment of an outside judge and prosecutor made by the defense. On July 7, 1997, defendant filed a Motion for the appointment of an outside judge and prosecutor and the Tribal Court approved it on the same day, with Prosecutor Wildcat concurring. On July 22, 1997, the Clerk forwarded a copy of the Order granting *133 the Motion to the Reservation Saiety Committee and sometime between July 22nd and July 25th Donald Sollars and Kathy Flammond of Browning, MT., were appointed Special Judge and Prosecutor, respectively. On July 29, 1997, Lay Advocate Reum was notified of the appointments. On or about July 30, 1997, Reum attempted to contact Prosecutor Flam-mond but was informed by Special Judge Sollars that Flammond would not return until the following day. The Judge also informed Reum that an Order would be mailed setting August 11, 1997 to hear pretrial motions and that the original trial date of August 12th would stand. Reum expressed concern regarding the established time frames, however, Judge Sollars did not yield.
On August 11 1997, Reum filed a Motion to Dismiss citing that the alleged violated section was not intended to apply to those holding Tribal Government positions, hence the section did not apply to Morales and further, that the alleged violated section, as applied, was in conflict with Article VI. Section 2(b) Fort Peck Assini-boine & Sioux Tribes Constitution and By-laws which, the defendant maintains, sets forth exclusive provisions for dealing with the conduct of a Tribal Board member or officer. The Motion to Dismiss was denied by the Tribal Court. On August 12, 1997, a two-day jury trial was held which resulted in a verdict of guilty. On August 14, 1997, the defendant filed an appeal of this verdict as set forth below.

ISSUES PRESENTED

Defendant’s “Notice of Appeal” fails to precisely identify the legal issues for this Court to decide. Unfortunately, are “on our own” to decipher counsel’s Notice of Appeal in an attempt to locate relevant issues which he would like for us to address. We note at the outset that “Title” CCOJ § 206(c) requires that all appellants set forth the reason(s) for their appeal in the Petition for Review (sometimes referred to and entitled “Notice of Appeal"). Thus, we limit the issues for review herein accordingly. (In re: Mori-ah Watchman FPCOA #242. page 4):
1. Was defendant denied due process of law in that he was afforded insufficient time to prepare for trial?
2. Did the Tribal Court err in denying defendant’s Motion to Dismiss as untimely?
3. Did the Tribal Court err in denying defendant’s Motion to Disqualify the Special Judge for engaging in an ex-parte conversation with the Fort Peck Tribes’ prosecutor?
4. Did the Tribal Court err in denying defendant’s Motion to Continue the trial until after the general elections were held?
5. Was defendant denied equal protection?
In addition to the above cited issues, defendant’s Notice of Appeal continued: “There are several other rulings that the presiding judge made during the trial proceedings that wall be addressed when the briefing schedule is set for the parties to present.” (See defendant’s Notice of Appeal, August 14, 1997, page 3, paragraph 7.) Obviously, defendant’s counsel labored under the mistaken belief that he was not required to itemize each reason supporting the appeal at the time of it’s filing pursuant to Title II CCOJ § 206(c)[3] *134 and, was further mistaken in the belief that he could “add” issues at a later time. While we reject this ad hoc approach to appellate practice, it is necessary to compare the issues set forth in defendant’s brief with those in his Notice of Appeal in order that we might ferret out the substantive issues that are properly before this Court. In defendant’s brief, the following issues are addressed:
A. Did the Court violate defendant’s due process rights?
(1) Is the statute facially vague because it:
(a) fails to inform a defendant what conduct is proscribed?
(b) allows prosecutors to impose their own personal determinations of what is permissible behavior?
(2) Is the statute unconstitutionally overbroad because it prohibits constitutionally protected activities?
(3) Did the Tribal Court’s failure to appoint a “replacement judge” to rule on pretrial motions effectively bar defendant from filing his motions or engaging in pretrial discovery?
(4) Did the Special Judge’s failure to cite controlling authority in denying defendant the right to file certain pretrial motions constitute reversible error?
(5) Did the Court’s failure to instruct the jury beyond reading the statute itself fail to adequately advise the jury of the essential elements of the offense and the extent of the prosecution’s burden of proof?
B. Does the ordinance violate constitutionally protected free speech?
C. Is the ordinance itself vague and overbroad, both facially and as applied?
D. Is the defendant entitled to legislative immunity for statements he made in his official capacity as a Tribal Executive Board member during the course of debate at aboard meeting?
E. Was the presiding judge biased concerning matters of law?
F. Is the ordinance in conflict with existing tribal constitutional law regarding a remedy to address a council member’s prejudicial conduct?
In comparing defendant’s “Notice of Appeal” with defendant’s October 27, 1997 brief, only issues # 1 and # 2 (Notice of Appeal) were briefed. Inasmuch as defendant failed to address Issue # 53, 4, and 5 in his brief, we conclude that he has abandoned them for the purposes of appeal. Payne v. Payne FPCOA # 253. page 3.
We conclude that those issues contained in defendant’s Notice of Appeal which Were not briefed (namely # 53, 4, & 5) and conversely, those contained in defendant’s brief which were not set forth in defendant’s Notice of Appeal (namely A(l), A(2), A(4), A(5), B, C, D, E, & F) are not properly before this Court and will not be addressed herein.
We now turn to defendant’s issues which are properly before us:
Defendant’s surviving issues essentially ring the same bell:
Was defendant deprived of due process because he was not allowed sufficient time to file pretrial motions and to prepare for trial?
In reviewing the procedural history, we note that defendant appeared pro se at his arraignment hearing on May 9th. On that same day, he was informed that a *135 pretrial conference would be held June 19th and that the trial would be held on August 12th. Neither of those dates were changed. A pretrial conference ivas held on June 19th and the trial ivas held, on August 12th. Defendant certainly was not “surprised” by either of those dates. He had ample time to prepare. Standing alone, these facts would warrant a total rejection of defendant’s contention that he was denied due process of law. However, defendant contends that an agreement was made with the prosecutor, Bryce Wildcat, to the effect that the only motion that would be filed would be a defense motion requesting the appointment of an outside judge and prosecutor. That motion was not filed until July 7, 1997, eighteen days after the pretrial conference on June 19, 1997. Defendant offers no explanation for the delay in filing this motion, yet he complains that he was not given sufficient time to prepare. If defendant had been diligent with the filing of the Motion for Outside Judge and Prosecutor, he could have garnered an additional seventeen or eighteen days for which to prepare for trial.
Defendant also contends that the Court erred in not allowing him to file pretrial motions on August 11th, the day before the trial. We agree with the Court, these motions should have been filed long before. Defendant contends that he had no one to “address” the motions to, in that no outside Judge had been appointed until sometime between July 22nd and July 25th (the defendant was apparently not notified of the appointment until July 29th). Thus, from at least June 19th through July 29th defendant did not know to whom to address the motions. Defendant fails to recognize that the “Court” is an institution, not a particular judge. He could have filed his motions at any time from his May 9th arraignment date. After the appearance of counsel on May 27th, it would have seemed logical that defendant’s counsel would want to discover as much as possible regarding the prosecution’s case. Certainly after the agreement was made on June 19th that a Motion for the Appointment of an Outside Judge and Prosecutor would be filed, it was incumbent on defendant to press forward with his case, filing any discovery requests and/or procedural motions that he deemed necessary.
We find no merit in defendant’s claims that he was denied due process due to insufficient time afforded him to prepare for trial. On the contrary, we note that defendant had from May 9th through August 11th to prepare for trial, a total of three months and two days. He was not surprised in any way by the prosecution, nor was the Tribal Court remiss in the processing of his “Outside Judge” motion. Further, we find no prejudice to the defendant due to the time lapse between July 11th when the Motion for Outside Judge was granted, and July 29th the date that defendant was informed that an outside judge and prosecutor had been appointed. He could have, and indeed, should have continued to prepare his case, filing any and all motions and discovery requests, from the date of his arraignment on May 9th.
We note that due to the politically sensitive nature of this case and the ramifications of a guilty verdict before the election date, defendant may have been desirous of delaying the trial himself (witness the eighteen days to file the Motion for Outside Judge and further, the Motion to Continue the Trial until after the election [issue 4, defendant’s Notice of Appeal]). On the other hand, we are not unmindful that defendant’s political opponents may have been desirous of speeding the trial up or at the very least, keeping it “on track” for the obvious political fallout that would result *136 from a guilty verdict prior to the general elections[4].
Regardless of any such potential “behind the scenes” maneuvering, we look at the chronology alone and conclude that defendant had adequate time to file pretrial motions and to prepare for trial and was not, therefore, denied due process of law.
However, even though none of defendant’s issues which are properly before us warrant reversal, this Court will raise, sua sponte, issues of a critical constitutional nature. Llewellvn Eagle v. Fort Peck Tribes FPCOA #210 at page 7. One such issue must be raised in this case regarding the jury instructions and we now raise the issue sua, sponte:
Did the Court’s failure to instruct the jury beyond reading the statute itself fail to adequately advise the jury of the essential elements of the offense and thus, deprive defendant of due process of law?
We acknowledge at the outset that defendant did raise this issue in his October 27th brief. However, as we noted above, he had failed to raise the issue in his Notice of Appeal and was therefore foreclosed from raising it later.
We start the analysis by examining the statute:
“Whoever forcibly assaults, resists, opposes, intimidates or interferes with any member of the Tribal Executive Board, or any Judge or acting Judge of any Court, created by the Tribes or created under the authority of the United States, or any officer or employee of the Tribes or the United States, on account of performance of official duties, or while such member, Judge, officer or employee engages in official duties, shall be guilty of a felony.”
Title III CCOJ § 407(a)
This statute is modeled from, and adopts language contained in, 18 USC § 111.[5] The first question that arises when reading either our statute or § 111 is whether the adverb “forcibly” modifies only the verb “assault” or whether it modifies “assault” and each of the subsequent verbs. This question was answered in a 1952 federal case, wherein the Court stated:
“The use of the adverb ‘forcibly’ before the first of the string of verbs, with the disjunctive conjunction used only between the last two of them, shows quite plainly that the adverb is to be interpreted as modifying them all. (Citations omitted) Not only is this required by the ordinary rules of grammatical construction, but it would be absurd to limit the modifying effect of ‘forcibly’ to the word *137 ‘assaults’, since this is the only one of the succeeding verbs in which the use or threat of force is necessarily implied and as to which the use of the adverb adds nothing. It should be noted also that section 111 is one of the sections under chapter 7 of the Criminal Code headed ‘Assault’ and that the other sections of the chapter relate to assaults upon public ministers, and assaults and maimings within maritime and territorial jurisdiction. Such grouping of the section with others defining crimes in which force is a necessary element is not without significance. Noscitur a sociis.” Long v. United States, 199 F.2d 717, 719 (4th Cir.1952).
We adopt the language used in Long and hold that only “forcible” action violates § Jf07(a). We note that the complaint filed against defendant on May 6, 1997, alleged that Morales “did forcibly intimidate ...” and therefore comports with today’s holding. However, upon examining the record, we could find no instruction to the jury regarding this essential element of the complaint. The trial judge simply read the statute:
“This has been (a) long two days. I guess, it’s at this time, it will be put into your hands and you’ll be the judges in this. I’ll read you the principles of law you will apply to the facts in this case. These are the instructions. The defendant, John Morales, is on trial before you upon a complaint filed in this Court, charging him with the offense of Protection of Members of Tribal Executive Board. Which is Title Ill, Chapter 4, Section 407(a) of the Comprehensive Code of Justice. What he is charged with, ‘Whoever forcibly assaults, resists, opposes, intimidates or interferes with any member of the Tribal Executive Board, or any Judge or acting Judge of any Court, created by the Tribes or created under the authority of the United States, or any officer or employee of the Tribes or the United States, on account of performance of official duties, or while such member, Judge, officer or employee engages in official duties, shall be guilty of a felony.’ A law presumes that a person charged with a crime is innocent until the proven guilt is established beyond a reasonable doubt ...” (Trial transcript, page 284. line 4 through page 285. line 3.)
It is impossible to determine whether the jury understood that the defendant must have acted in a “forcible” manner to be guilty of a violation of this statute. We find nowhere in the record that the complaint itself was introduced into evidence[6]. As noted above, the tribal court simply read the statute to the jury in favor of instructing them that they must find the defendant guilty of each and every element of the offense charged.[7]
We hold that, in criminal cases, the tribal court has the duty of giving, on its own motion, instructions on the perti *138 nent general principles of law where they are not proposed by the parties. This requirement is essential to ensure that each defendant is afforded due process of law. The trial court should have instructed the jury that it could not find Morales guilty unless the jury believed that Morales forcibly intimidated the victim. It should be noted however, that many of our penal statutes are sufficiently clear on their face and the jury would not need any instruction beyond the reading of the statute. However, this particular statute requires clarification as to the type of conduct proscribed and defendant was entitled to have the jury so instructed. Failure to instruct denied defendant due process of law and requires that his conviction be set aside and this matter is remanded to the Tribal Court for further proceedings.
IT IS SO ORDERED.

. Violation of this section is a felony.

. The full text of the complaint read; "You are hereby charged by this Complaint with committing the offense of” Protection of members of the Tribal Executive Board "which is a violation of Title ill Chapter 4 Section 407a, Fort Peck Tribal Code of Justice, TO WIT: Said Defendant did on or about the 61h day of May 1997, in the Fort Peck Tribal Jurisdiction: at approximately 11:25 a.m., Cerafin John Morales, did forcibly intimidate Thomas J. Anketell, ill while in his official capacity as a Tribal Councilman in an official meeting in the Tribal Council Chambers by his actions of approaching Thomas Anketell and wanting to take him outside and physically assault him. This act was conducted in the presence of Gene Culbertson, Roxanne Gourneau, June Stafne, Denver Atkinson, Ray White Tail Feathers and Craig Smith.”

. Section 206(c) states: “The Notice of Appeal shall specify the party or parties taking the appeal, shall designate the judgment, or part thereof appealed from, and shall contain a short statement of reasons for the appeal
[[Image here]]

. Convicted felons are barred from serving on our Tribal Council. Violation of the statute charged in this case is a felony.

. 18LSCS at 111(1997)
at III. Assaulting, resisting, or impeding certain officers or employees
(a) In general. Whoever-
(0 forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties; or
(2) forcibly assaults or intimidates any person who formerly served as a person designated in section 1114 on account of the performance of official duties during such person’s term of service, shall, where the acts in violation of this section constitute only simple assault, be fined under this title or imprisoned not more than one year, or both, and in all other cases, be fined under this title or imprisoned not more than three years, or both.
(b) Enhanced penalty. Whoever, in the commission of any acts described in subsection (a), uses a deadly or dangerous weapon (including a weapon intended to cause death or danger but that mils to do so by reason of a defective component) or inflicts bodily injury, shall be fined under this title or imprisoned not more than ten years, or both.

. The prosecutor did make reference to the charging allegation in her opening statement, however, in our opinion, confuses the issue by referring to the charge as “a crime of assault on an elected official" (Trial Transcript page 46. lines 4-5} and then suggesting that the four elements that constitute the crime are ‘‘act", "intention", "motive” and "a result”), (at page 46. lines 7-8)

. We also note that during oral argument before this Court, both counsel acknowledged that the jury, during their deliberations, had additional questions concerning the reading of the statute. After some discussion, the Tribal Court and both counsel entered the jury deliberation room. However, under strict orders from the Court, neither counsel was allowed to speak. After expressing their concern over how the statute was to be interpreted, the Tribal Court told the jury that he had already given them their instructions and he could not provide additional instructions beyond the reading of the statute itself. That the jury was confused and frustrated with the *138 Court's failure to clarify their instructions is further evidenced by a written statement that they requested be read into the record: “Although none of us are happy with this decision, we, the jury, feel that this incident should never have come to Court. It should have been taken care of at committee level. The committee chainnan allowed this (to) escalate to the point where it got out of hand. We are embarrassed that this is the way that our Tribal Council conducts business." (Trial Transcript page 289, pages 5 through 12.)